Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,945-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KURT HORTON AND MYONG                    Plaintiffs-Appellants
HORTON

versus

SAVANNAH PLACE HOME-                      Defendant-Appellee
OWNERS' ASSOCIATION, INC.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 173,888

Honorable Allen Parker Self, Jr., Judge

* * * * *

THE SMITH LAW OFFICE, LLC                 Counsel for Appellants
By: Eskridge Elgin Smith, Jr.

THOMAS, SOILEAU, JACKSON
& COLE, LLP
By: Matthew S. Smith                      Counsel for Appellee

* * * * *

Before COX, ROBINSON, and HUNTER, JJ.

HUNTER, J., dissenting with written reasons.

**COX, J.**

This appeal arises out of the Twenty-Sixth Judicial District Court, Bossier Parish, Louisiana. Plaintiffs, Kurt and Myong Horton (collectively, "the Hortons"), filed a petition for damages and injunctive relief against defendant, Savannah Place Homeowners' Association, Inc ("Savannah Place") for the relocation of a mail kiosk. Savannah Place filed an exception of no cause of action, arguing in part, that the Hortons' petition prescribed. The district court ruled in Savannah Place's favor. For the following reasons, we affirm the district court's ruling.

## FACTS & PROCEDURAL HISTORY

The Hortons own a home located at 404 Columbia Circle, Bossier City, Louisiana. The property is part of the Savannah Place Subdivision and is subject to a Declaration of Covenants, Conditions and Restrictions. On August 21, 2024, the Hortons filed a petition for damages and injunctive relief against Savannah Place. The Hortons claimed the board of directors relocated the resident mail kiosk "directly across from their property and at the end of and directly across from their driveway." The Hortons admitted that although Savannah Place sent notice that it intended to consolidate the mail kiosks throughout the neighborhood, it failed to inform the Hortons that one of the new locations would be across from their property.

The Hortons alleged that the relocation of the kiosks created safety hazards for both residents and mail carriers who now stop their vehicles in the street while they retrieve and deliver mail. The Hortons claimed this not only resulted in undue traffic congestion but has obstructed their ability to have full, continuous, and unrestricted access to their property without hinderance from excessive residential traffic. The Hortons alleged that as a

result of the relocation, they have suffered damages in the form of emotional distress and anxiety, their property diminished in value, and they faced a continuous safety risk due to excessive traffic congestion. Accordingly, the Hortons maintain that Savanah Place breached its duty to the Hortons and other residents to maintain a safe residential neighborhood. The Hortons sought an order compelling Savannah Place to either relocate the kiosk or, alternatively, be liable for the stated damages.

In response, Savannah Place filed exceptions for no cause of action and prescription on April 23, 2025. Savannah Place argued that the Hortons did not specify any actual damage sustained from the relocation; rather, the Hortons only broadly alleged that the kiosk relocation created a safety risk but did not identify any actual harm that occurred as a result. Savannah Place further noted that:

> With no actual damages, there is no cause of action, for with no damages, there is nothing for the law to repair. For the [Hortons] to attach liability to Savannah [Place], they must be able to prove every element of the duty-risk analysis by showing: (1) Savannah [Place] had a duty to conform its conduct to a specific standard of care; (2) Savannah [Place] failed to conform its conduct to the appropriate standard; (3) Savannah [Place's] substandard conduct was a cause-in-fact of the [Hortons'] injuries; (4) the substandard conduct was a legal cause of the [Hortons'] injuries; and (5) actual damages.

In this case, Savannah Place argued that it did not breach its duty to the Hortons or any other resident in the subdivision because the relocation of the mail kiosk was discussed and voted upon during a homeowners' association meeting (which the Hortons failed to attend); the relocation was done with the approval and oversight of the United States Postal Service, the Bossier City Department of Permits, and Bossier City's Metropolitan Planning Commission; and no actual harm has been alleged or occurred in fact in the

2

three years since the relocation of the kiosk. Moreover, the Hortons provided no evidence that their property diminished in value and cannot show any evidence unless and until they sell their home.

Savannah Place further argued that the Horton's petition should be dismissed because their claim prescribed. Specifically, Savannah Place argued that if the Hortons successfully alleged damage, then their claim was subject to a one-year prescriptive period that began to run from the date of constructive knowledge. Savannah Place argued that the Hortons had both actual and constructive knowledge of the relocation of the kiosk because they were notified about the relocation on December 13, 2021, in the annual letter. The Hortons then confirmed their knowledge of the relocation by email on January 17, 2022. The mail kiosk was built in February of 2022, but the Hortons did not file their petition until August 2024, two years after the kiosk was built. Savannah Place attached a copy of the letter sent to all residents concerning the relocation, and the email exchange.

In their opposition to the exceptions of no cause of action and prescription, the Hortons argued that their original petition specified actual damages as they claimed that the relocation of the kiosk created a risk of harm to the health, safety, and welfare of not only the Hortons, but other residents in the subdivision who need to access the mail kiosk because it forces mail carries and residents alike to park or remain on the public street while mail is delivered and retrieved. The Hortons argued that they clearly alleged that "the mail kiosk, as relocated and consolidated, restricts access by the Hortons' to their own driveway and creates a foreseeable risk of harm or accident from the congestion created by the location of the mail kiosk" because there is no designated parking area for vehicles so they can

3

avoid obstructing the flow of traffic or stopping at the end of the Hortons' driveway.

The Hortons argued that regardless of whether an accident occurred, Savanah Place is comparatively at fault for relocating the kiosk and creating a potentially dangerous condition. The Hortons further argued that they have trouble accessing their driveway freely and must deal with excess traffic from mail carriers and residents accessing the kiosk. In addressing Savannah Place's argument for prescription, the Hortons argued that they have a contractual relationship with Savannah Place, and in turn, Savannah Place has a fiduciary duty to "promote the health, safety, and welfare of all the owners of lots within the subdivision."

The Hortons maintained that their claim is one for breach of this fiduciary duty and the breach of the contractual agreement, which is subject to a 10-year prescriptive period. The Hortons argued that the damage is not to their property specifically, but rather to their health, safety, and welfare because Savannah Place relocated the kiosk without considering the unreasonable risk of harm created from undue traffic congestion. The Hortons attached a copy of the Declaration of Covenants, Conditions and Restrictions (the "Declaration").

A hearing was held on the matter on July 17, 2025. Thereafter, the district court rendered judgment on the matter, noting that the Hortons admitted the kiosk is not located on their property, but nevertheless argued that the flow of traffic from the new location hindered use of their property, and created a safety risk for drivers and pedestrians. The district court found that the language used by the Hortons was based in tort, and, therefore,

4

determined their claim prescribed.  Specifically, the district court concluded, in part, that:

> [The Hortons] make the allegation that Savannah Place [sic] owes them a fiduciary duty and per the Covenants has breached that duty making the applicable prescriptive period ten years. Nevertheless, while there is a discussion of fiduciary duty, it appears that [the Hortons'] theory of recovery actually sounds in tort, not breach of contract.  [The Hortons] discuss that the risk is clearly foreseeable.  [The Hortons] state that whether an accident has occurred to date or not the comparative fault of the HOA in relocating the consolidated kiosk in creating a dangerous condition can clearly be anticipated.
>
> In anticipating a wreck, [The Hortons] maintain that whether they have an accident while backing out of their driveway or collide with a vehicle parked in the street or some other driver has an accident while a postal worker has an accident delivering the mail, one of the co-tortfeasors who is liable to [The Hortons] or any other party would also be the Savannah Place [sic] that created the unreasonable risk of harm by the relocation of the mail kiosk.
>
> [The Hortons] are clearly using language bases in tort, not breach of contract.  [The Hortons] also allege anxiety and emotional distress as damage.  While these are not impossible in a breach of contract case, these damages are more commonly associated with a tort claim.  The Court notes that there was no copy of the underlying contract attached to the petition.
>
> Since [The Hortons] are claiming property damage and general damages under La. C.C. art. 2315, from this "nuisance" created by the mail kiosk, prescriptive period under La. C.C. art. 3493 and 3493.1 apply.  It is undisputed that the mail kiosk was installed sometime in February of 2022.  Because the applicable prescriptive period prior to the 2024 amendments under both articles was one year, [The Hortons] had until February of 2023 to file suit.  Even with the two-year amendment, [The Hortons'] claim would still be prescribed as the suit was not filed until August of 2024.

Accordingly, the district court granted Savannah Places' exception of prescription.  In granting the exception of prescription, the district court did not expound upon the merits of the exception of no cause of action.  This appeal followed.

5

## DISCUSSION

On appeal, the Hortons present three assignments of error for review. However, given the nature of the arguments, this Court has consolidated the arguments on appeal.

The Hortons principally argue that the district court erred in applying a one-year prescriptive period under the former text of La. C.C. art. 3493 rather than applying the 10-year prescriptive period under La. C.C. art. 3499 without considering the copy of the Declaration and the laws established by the Louisiana Planned Community Act ("LPCA").

Specifically, the Hortons argue that the LPCA, while prospective in nature, governs if the contract between a member and a homeowners' association is silent. Importantly, the Hortons note that La. R.S. 9:1141.48 provides that a "declarant, association, lot owner, or any other person who has suffered actual damages may bring an action to enforce a right granted or obligation imposed by this SubPart." The Hortons argue, as lot owners and members of the association, they are entitled to enforce the contractual obligations and fiduciary duties under both the terms of the community documents and under the provisions of the LPCA.

The Hortons assert that this is a personal action which is subject to a liberative prescriptive period of 10 years under La. R.S. 3499. The Hortons argue that the terms of the Declaration govern the rights and obligations of the parties and determine a member's cause of action against a homeowners' association. Because of this, the Hortons argue that the simple fact that they sought damages for emotional distress and anxiety, diminished property value, and a continuous safety risk due to excessive traffic congestion does not convert or change the nature of their personal action to a tort.

In support, the Hortons cite this Court's opinion in *Southern Trace Property Owner's Association v. Williams*, 52,653 (La. App. 2 Cir. 9/25/19), 280 So. 3d 826. In that case, this Court addressed an issue of prescription between a lot owner and the homeowner's association. The Hortons argue that the Court reviewed the governing documents and applied a ten-year prescriptive period regarding the homeowners' association's action to collect unpaid dues against the property owner under La. C.C. art. 3499.

In the present case, the Hortons argue that unlike this Court in *Southern Trace Property Owner's Association v. Williams*, *supra*, the district court failed to consider the Declaration or the LPCA and therefore failed to apply the 10-year prescriptive period to this case. The Hortons assert that their action is based on a violation of the Declaration, which is a personal action governed by art. 3499, just as in *Southern Trace Property Owner's Association v. Williams*, *supra*.

The Hortons further argue there were no alleged dates in the petition so that the action was not prescribed on its face in that regard. Moreover, any other communications (i.e., emails between Savannah Place and the Hortons) were not sent in accordance with the terms of the Declaration such that prescription would not begin to run unless Savannah Place could show that the emails sent regarding the mail kiosks were sent in compliance with the terms of the Declaration. The Hortons further assert that because they are not seeking damages for work done or damage to their property, it is not an action based in tort; however, they argue that the value of their property could be affected if the breach is not removed.

As a precursor to this discussion, this Court highlights first that it is sympathetic to and understands the Hortons' circumstances; specifically,

their concerns regarding traffic conditions, safety, having access to property without hindrance from other vehicles, and the value of their property. Our homes are inviolable sanctuaries and given this, none of the concerns raised are trivial and, in fact, should be addressed as it has an impact on their daily lives. Moreover, the pictures of the kiosk provided in the record do reflect that Savannah Place had sufficient room behind the kiosk to provide an area for residents to park their vehicles as they retrieve their mail, which could have lessened the flow of traffic passing by the Hortons' home.

However, as it concerns the Hortons' assertions that this matter is a personal action which arose under both the Declaration and the LPCA, subjecting their claim to a 10-year prescriptive period, we respectfully disagree.

The dispositive issue before this Court is to determine, for purposes of prescription, the nature of the Hortons' cause of action; i.e., whether their petition is an action in tort or in contract.

As a general proposition, covenants between homeowners and homeowners' associations are considered contracts. The statutory scheme established by the newly enacted LPCA makes clear that community or governing documents, such as the Declaration in the case sub judice, prevail and act as the force of law between the parties, except to the extent that the documents are silent. La. R.S. 9:1141.3, 2024 Rev. Comm. Accordingly, the covenants between homeowners and homeowners' associations are considered contracts; thus, they are subject to interpretation and enforcement as contracts. *Williams v. Southern Trace Property Owners Association, Inc.*, 43, 186 (La. App. 2 Cir. 4/23/08), 981 So. 2d 196, *writ denied*, 08-1348 (La. 9/26/08), 992 So. 2d 988,

The LPCA grants homeowners the right to bring an action to enforce a right granted or obligation imposed under the LPCA. La. R.S. 9:1141.48. Likewise, Section 9 of the Declaration in this case provides that any owner "shall have the right to enforce, by any proceeding at law or equity, the restrictions, conditions, and covenants now or hereafter imposed by the provisions of this [D]eclaration."

The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings. *Born v. City of Slidell*, 15-0136 (La. 10/14/15), 180 So. 3d 1227. The Hortons argue the relationship between them and Savannah Place was contractual, and therefore, the 10-year prescriptive period of La. C.C. art. 3499 should apply. However, the mere existence of a contract, or the allegation that a claim is one based on or arising from an existing contract, does not dispositively mean a breach of contract occurred. We, therefore, must look at the nature of the cause of action to determine the applicable prescriptive period.

Delictual actions were formerly subject to a liberative prescription of one year under La. C.C. art. 3492. An action on a contract is governed by the prescriptive period of 10 years for personal actions. La. C.C. art. 3499. The correct prescriptive period to be applied in any action depends upon the nature of the action; it is the nature of the duty breached that should determine whether an action is in tort or in contract. *Trinity Universal Insurance Company v. Horton,* 33,157 (La. App. 2 Cir. 4/5/00), 756 So. 2d 637. This Court has previously noted that:

> The classical distinction between "damages ex contractu" and
> "damages ex delicto" is that the former flow from the breach of
> a special obligation contractually assumed by the obligor,
> whereas the latter flow from the violation of a general duty
> owed to all persons. Even when tortfeasor and victim are

9

bound by a contract, courts usually apply the delictual prescription to actions that are really grounded in tort.

*Id.*, citing, *Harrison v. Gore,* 27,254 (La. App. 2 Cir. 8/23/95), 660 So. 2d 563, *writ denied,* 95-2347 (La. 12/8/95), 664 So. 2d 426.

As lot owners and members of the homeowners' association, the Hortons are entitled to enforce any contractual obligations and duties of the homeowners' association under the Declaration. However, the Hortons have not identified any specific provision or contractual obligation to show that Savannah Place was in breach of either the Declaration or the LPCA. The Hortons' petition principally alleged that the *relocation* of the mail kiosk inadvertently created an increase in traffic which they claim created a safety risk, at various times, there is interference with immediate driveway access, anxiety and emotional distress, as well as a diminution in the value of their property.

The alleged damages arise from a specific course of conduct (i.e., the relocation of the kiosk) rather than a specified contractual duty or obligation contained in the Declaration. In their opposition, the Hortons alleged that the *relocation* caused damage to their "health, safety, and welfare." The Hortons highlighted that the Declaration provided, in part:

> It is, or will be, the incorporator of Savannah Place Homeowners Association, Inc., a Louisiana nonprofit corporation, who purpose is to preserve, maintain and administer property in order to promote the recreation, health, safety and welfare of all owners of lots within the Subdivision and adjoining property[.]

We note that the Hortons cited the preamble or precursory introduction to the specific covenants and restrictions of the Declaration. This portion of the Declaration does not contain specific, actionable language detailing the rights, duties, or obligations for Savannah Place; rather, it provides the intent

for enforcing the restrictions and ordinances which follow it. As such, while Savannah Place expressed an intent to provide for the health, safety and welfare of its residents, this is not an all-encompassing contractual fiduciary duty for the personal health of each member unless it is coupled with the direct violation of a specific duty or restriction outlined in the sections of the Declaration.

In the present case, the Hortons have not identified a specific and enforceable duty related to their health, safety, and welfare outlined in either the Declaration or the LPCA to assert Savannah Place was in breach of contract. Again, in their petition, the Hortons alleged that their damages occurred due to Savannah Place's *relocation* of the kiosk; they did not seek the enforcement of a clear contractual covenant or restriction. The Hortons have not alleged that a specific provision of the Declaration either prohibits Savannah Place from relocating the kiosk, obligates Savannah Place to relocate the kiosk to mitigate increases in traffic flow,or ensure that the relocation of the kiosk will not entail an increase in traffic by or in front of a residents' home.

At most, under the LPCA, Savannah Place is "responsible for maintenance, repair, and replacement of the common areas and limited common areas[.]" La. R.S. 9:1141.33. However, the Hortons have not alleged that the condition of the kiosk itself creates a hazardous condition or is a safety risk to residents, and there is no other identified duty which obligates Savannah Place to relocate the kiosk.

Although the Hortons cite *Southern Trace Property Owner's Association v. Williams*, *supra*, in support of their assertion, we find that the case is distinguishable from the present matter. Notably, in *Southern Trace*

11

*Property Owner's Association v. Williams*, *supra*, this Court found that the terms of the community documents created a personal obligation for a homeowner's association to collect delinquent association dues. This Court specifically noted that the association's community documents provided that each owner was personally obligated to pay the dues, and the association could bring an action against the owner. Thus, this Court determined that the applicable prescriptive period was 10 years under La. C.C. art. 3499, rather than two years under La. C.C. art. 781.

In *Southern Trace Property Owner's Association v. Williams*, *supra*, the action involved the direct contractual enforcement of an obligation which was specifically and expressly contained within the governing documents for the association. In contrast, the Hortons have not specifically identified a specific contractual provision in the Declaration which can be enforced. Instead, the Hortons have alleged that Savannah Place's conduct itself caused harm, not the failure to uphold or enforce a specific governing provision.

Moreover, the Hortons have not identified any actual damage that has occurred because of the relocation, only that there is a foreseeable risk of harm due to the increase in traffic. This foreseeable risk of harm does not contractually obligate Savannah Place to relocate the kiosk absent some form of actual harm or specific duty outlined in the Declaration. Instead, the Hortons' damages, particularly those for anxiety and emotional distress, are delictual actions, which, at the time this petition was filed, was subject to a one-year prescriptive period. La. C.C. art. 3492. The Hortons admit they were notified that the kiosk was to be relocated in December 2021, they acknowledged the issue in an email on January 17, 2022, and were aware the

kiosk was installed in February 2022. The Hortons did not file this action until August 2024. Because such actions were subject to a one-year prescriptive period, the Hortons' claim prescribed.

The district court determined that the matter prescribed under the former text of La. C.C. art. 3493, damage to immovable property. However, the Horton's brief indicates there was no "direct damage" to their property; therefore, we find that La. C.C. art. 3493 should not have been applied to this case. However, La. C.C. art. 3493 was also subject to the same one-year prescriptive period as La. C.C. art. 3492, so that the same result is achieved regardless.

Therefore, we find that the district court did not err in concluding that the Hortons' claims sounded in tort rather than contract and was thus subject to a one-year prescriptive period.

## CONCLUSION

For the reasons set forth, the district court's judgment granting Savannah Place's exceptions for prescription is affirmed. Costs of this appeal are assessed to the Hortons.

**AFFIRMED.**

**HUNTER, J., dissenting**.

I believe Savannah Place's actions constitute a continuing tort because the presence of the kiosk is overt, persistent, and ongoing. *See*, *Winesberry v. St. Bernard Par. Gov't*, 25-00065 (La. 4/15/25), 406 So. 3d 416; *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So. 3d 991. Pursuant to the continuing tort doctrine, prescription does not begin to run until the wrongful conduct ceases. *See*, *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737 So. 2d 720; *Bailey v. Pinnacle Polymers, LLC*, 24-490 (La. App. 5 Cir. 4/2/25), 412 So. 3d 1063; *Scott v. Zaheri*, 14-726 (La. App. 4 Cir. 12/3/14), 157 So. 3d 779.

Based on the allegations set forth in the plaintiffs' petition, the relocated kiosk continues to restrict access to their driveway and to create daily traffic concerns in front of the plaintiffs' home. Consequently, this was, and continues to be, a continuing tort. I would remand this matter to the district court for a full determination on the merits. Savannah Place is not irreparably harmed by the proceedings.

For these reasons, I dissent.